**Dominic PAOLILLO, Lucy Wadsworth and Robert F. Grady, Plaintiffs–Appellants,**

v.

**DRESSER INDUSTRIES, INC., Defendant–Appellee.**

No. 433, Docket 88–7527.

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1988.

Decided Jan. 4, 1989.

---

**38**

Philip L. Steele, Hartford, Conn. (Rogin, Nassau, Caplan, Lassman & Hirtle, of counsel), for plaintiffs-appellants.

Christopher G. MacKaronis, Washington, D.C. (American Association of Retired Persons, Steven Zaleznick, Cathy Ventrell–Monsees, of counsel), for plaintiffs-appellants as amicus curiae.

Edward M. Richters, Hartford, Conn. (Day, Berry & Howard, Felix J. Springer, of counsel), for defendant-appellee.

Before FEINBERG, MESKILL and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

This case is before us for the second time. The ultimate issue is whether defendant-appellee Dresser Industries, Inc., through its Whitney Chain Division, violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA), by implementing an "elective termination program," pursuant to which plaintiffs-appellants Dominic Paolillo, Lucy Wadsworth and Robert Grady ended their employment with Whitney Chain. On the prior appeal, in June 1987 we reversed a grant of sum-mary judgment by the United States District Court for the District of Connecticut, and remanded for trial. In our prior opinion, with which we will assume the reader is familiar, we made clear that the key issue at trial should be whether plaintiffs had retired voluntarily. 821 F.2d 81. On this appeal from a judgment for defendant, after a trial, we reluctantly again reverse for reasons given below.

### Background

The relevant facts are as follows. In October 1982, in the midst of a significant business decline, Whitney Chain, a unit of Dresser Industries' Power Transmission Division of its Industrial Equipment Group, offered an elective termination program to all its employees age 60 and over. Whitney Chain instituted the program as a means of reducing costs and offered severance pay and other benefits to employees who agreed to retire early. The program was first announced on Tuesday, October 12, 1982, at a meeting between James Fiorino, Whitney Chain's Operations Manager, and employees eligible for the program. It was called on five minutes notice. Appellants Wadsworth and Grady attended this meeting. Appellant Paolillo was not at work that day and did not meet with Fiorino until the next day, at which time Paolillo apparently was given the same information that the other eligible employees had received.

At the October 12 meeting, Wadsworth and Grady were presented with a letter stating that Whitney Chain was instituting an overall cost reduction plan because of its economic problems and outlining the basic options available under the elective termination program. The letter stated that participation in the program was "totally voluntary" and emphasized to the employees that "you *must* return your election form ... by *October 18*," six days later. Whitney Chain concedes that important insurance and financial information was not provided at the meeting. The letter stated that "meetings will be held to answer any questions and review pension options." Grady met with company repre-

sentatives on the afternoon of Friday, October 15 to discuss how the program would affect him individually and signed the election form on Monday, October 18, the final day for decision.

There is some dispute over whether Whitney Chain representatives ever met with Paolillo and Wadsworth to discuss relevant pension and insurance information. Appellants claim that the two employees never had a meeting and were forced "to make their decisions on Monday, the 18th, without knowing what their retirement benefit or pension options were." Whitney Chain contends that a representative of the company met with all eligible employees to review the pension information and, in any case, all eligible employees were given printed individualized pension information along with an explanation booklet. Paolillo signed the election form on Monday, October 18, and the election form signed by Wadsworth was dated October 15 and stamped received on October 18.

By accepting early retirement Paolillo received severance pay of $608.88 per month for two years, Wadsworth $388.75 per month for two years and Grady a lump sum of $13,390. At the time, they were earning $29,226, $18,660 and $26,757 a year, respectively. Appellants claim that they would have been better off if they had remained on the company payroll and received their salaries rather than accepting a retirement into which they were unduly pressured. The retirements became effective on November 1, 1982. Paolillo had been employed by Whitney Chain for about 16 years, Wadsworth 15 years and Grady 31 years. The Whitney Chain plant ultimately shut down on October 31, 1984.

After our remand, the case was tried to a six-person jury in May 1988 before Judge Alan H. Nevas of the United States District Court for the District of Connecticut. Before trial, the district court granted two motions in limine. The first excluded appellants' proposed expert testimony on the coercive nature of the elective termination program, and the second excluded appellants' proposed evidence concerning lost unemployment compensation and social security benefits. The court also denied a motion by appellants to exclude evidence relating to the permanent closing of the Whitney Chain plant on October 31, 1984.

After the denial of these motions, the district court gave its charge to the jury, using the familiar *McDonnell Douglas* standard.[1] The jury deliberated for one and a half hours and returned a verdict for Whitney Chain. The court thereafter entered judgment in favor of appellee, and this appeal followed.

*Discussion*

In our prior opinion, we held that summary judgment for Whitney Chain had been improper because the combination of the shortness of time given to appellants to make a decision, the reason for the compressed time period, the length of service of appellants with Whitney Chain and the apparent complexity of the options open to them raised a material issue as to whether appellants were given sufficient time to make a considered choice. 821 F.2d at 84. We recognized, however, that "on a full record Whitney Chain may ultimately be successful on the issue of whether appellants in fact acted voluntarily." *Id.* at 85. We also noted some of the facts called to our attention by Whitney Chain that, if proved at trial, might persuade a jury to reach that result, such as "appellants' failure to ask for additional time and to express their dissatisfaction with the short deadline, and their signature on a statement affirming that the choice to retire was freely made," along with the possibility that the pressure appellants felt "was caused by the uncertain future of Whitney Chain," rather than by "the method of implementation" of the retirement plan. *Id.* at 84.

A jury has now heard all the evidence and has found for Whitney Chain. However, we conclude that we cannot simply affirm, although we are tempted to do so because we do not want to put the parties

---

1. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

to the expense and effort of another trial in a case whose outcome seems reasonably predictable. Nevertheless, we believe that we must reverse because the judge's charge was incorrect and misleading in a significant respect.

■ As already indicated, the key issue before the jury was whether, under all the circumstances, plaintiffs' retirement could fairly be characterized as voluntary. The district judge chose to present this issue of voluntariness in his instruction on "constructive discharge." In a typical constructive discharge case, the issue for the jury is whether an employee was pressured to leave, and did so, because of intentionally-inflicted intolerable working conditions. In this case, the issue was whether plaintiffs were pressured to leave, and did so, because they were given inadequate time, under all of the circumstances, to make a considered choice on whether to accept or reject the retirement option. In other words, the latter is what the jury should be told. The two situations are different, even though the departure of the employee in each is not truly voluntary. The charge in this case was awkward because the judge did not tailor the constructive discharge language to the case before him. In addition, the court also used in its charge the concept of prima facie case in a way that was unnecessary on these facts. Cf. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 85 (2d Cir.1983). Nevertheless, considering the charge as a whole, we conclude that the court did adequately pose the issue of voluntariness to the jury.

■ Our principal problem is with the part of the charge that followed. After the district court instructed the jury that defendant must articulate a legitimate non-discriminatory reason for its actions, it gave the following instruction on pretext:

In order to conclude that the reason given in this case for the Defendant's decision to implement the elective termination program in the manner it did were [sic] a pretext for age discrimination, you must find that the Defendant intentionally misstated those reasons, and that the reasons given were not true, and that the *real* reason for the decision was the plaintiffs' age. (emphasis added)

We believe this instruction "misconceives [the] requirement that the plaintiff prove the employer's explanation was a pretext." *Kennecott,* 710 F.2d at 82. Appellant is not required to show that age was the *principal* factor in the employer's decision. *Id.* (citing *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981)). Appellants are required to show only that the reasons offered by appellee were not its only reasons and that the age of appellants "made a difference" in its decision to implement the elective termination plan. See id. We believe that the court's use of the word "real" was confusing in that it failed to explain to the jury that age need not be the principal reason for appellee's decision to implement the elective termination program, but only a significant contributing factor.

Therefore, the jury may have found for plaintiffs on the issue of voluntariness but against them, because of an incorrect charge, on the issue of pretext. While we do not think this was likely, we cannot say it did not occur. Under the circumstances, we have no alternative except to reverse and remand for a new trial, at which we hope the jury's finding on the issues of voluntariness and pretext will be clarified by the use of appropriate interrogatories. In addition, we believe the district court should clearly instruct the jury that only if it finds that the terminations were involuntary should it proceed to the issues of the company's defense and whether that defense amounts to a pretext.

■ If there is another trial, we believe it will be helpful to indicate briefly our views on the various evidentiary rulings that appellants attack. The ruling excluding the testimony of experts was well within the discretion of the trial court, particularly since in pretrial depositions the experts expressed doubt as to whether they could give an opinion about the "national norm" with respect to voluntary separation plans. Similarly, the district court did not abuse its discretion in admitting evidence of the closing of the Whitney Chain plant on October 31, 1984. Finally, the district judge did not err in excluding evidence of

social security and unemployment compensation benefits allegedly lost by appellants as a result of their decision to retire. Nothing we said in *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir.1984) requires a different result.

Finally, appellee claims that the judgment of the district court should be affirmed because the jury rendered a verdict for it with respect to the claim of a willful violation of the ADEA, and plaintiffs' claim of a nonwillful violation of the ADEA is barred by the statute of limitations. Appellants point out that even though the district court denied appellee's motion for a directed verdict as to a nonwillful violation, appellee did not take a cross-appeal on this issue. Putting to one side this alleged procedural defect, we have already indicated why the jury's verdict cannot be affirmed, so that the premise of appellee's argument falls. In any event, the district judge, on the record before him, correctly denied appellee's motion for a directed verdict with respect to plaintiffs claim of a nonwillful violation.

Judgment reversed and case remanded for further proceedings consistent with this opinion.