Maryanne **RENZ**, Plaintiff–Appellant,

v.

**GREY ADVERTISING, INC.,**
Defendant–Appellee.

No. 1244, Docket 96–7775.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1997.

Decided Aug. 4, 1997.

As Amended Sept. 2, 1997.

218

Jeffrey M. Bernbach, New York City (Jason L. Bernbach, New York City, on brief), for Plaintiff–Appellant.

Howard J. Rubin, New York City (Neal H. Klausner, Michael E. Kreitman, Davis & Gilbert, New York City, on brief), for Defendant–Appellee.

Before: MESKILL and NEWMAN, Circuit Judges, and McAVOY,* Chief District Judge.

JON O. NEWMAN, Circuit Judge:

This appeal primarily presents the question of whether, in an age discrimination case, a charge instructing the jury that the plaintiff bears the burden of proving that her age was the "real reason" for her discharge was erroneous. The issue arises on an appeal by plaintiff Maryanne Renz from the May 29, 1996, judgment of the District Court for the Southern District of New York (Charles M. Metzner, Judge), dismissing Renz's employment discrimination complaint following a jury verdict in favor of defendant Grey Advertising, Inc. ("Grey"). Although we conclude that the charge erred by using "the real reason" formulation of the plaintiff's burden, we affirm the judgment of the District Court because the error was harmless.

## Background

Renz, a female with more than 30 years of experience in the advertising industry, alleges that she was terminated by Grey in March 1994 because of her age, her gender, and her status as an older woman. Grey contends that it fired Renz because of her poor performance in several crucial job functions. The following statement of facts summarizes the evidence and testimony presented at trial.

Renz was hired by Grey as an associate creative director in August 1991, one week shy of her 50th birthday. Her salary at that time, and until her discharge in March 1994, at the age of 52, was $100,000 a year. Renz initially worked in a creative group headed by Jim Morrisey, but was transferred to a group headed by David Liemer, a 36–year–

* Honorable Thomas J. McAvoy, of the United States District Court for the Northern District of New York, sitting by designation.

old group creative director, in the summer of 1992. Liemer requested Renz to join his group. In the period immediately prior to Renz's transfer, Liemer's group consisted of eight employees: Aristedes Kambanis (male, age 57), Carolyn Bien (female, age 53), Anthony Mobilia (male, age 53), Larry Farley (male, age 50), William Urban (male, age 48), Robert Signorile (male, age 46), Walter Winchurch (male, age 37), and Maureen McKeown (female, age 26). When Liemer selected Renz, then 50 years old, to serve as second-in-command of his group, he terminated Signorile's employment. The other seven employees at the time of Renz's initial transfer remained on Liemer's staff at the time of her discharge.

Renz's duties required her to help Liemer with whatever aspects of the business he could not personally attend to himself, including meeting with clients, representing his group at meetings with senior-level account managers at Grey, and presenting advertising proposals to clients. Grey's representatives testified that the firm eventually decided to terminate Renz because of her poor performance in discharging her duties as Liemer's deputy. Three incidents were emphasized.

The first incident concerned Renz's presentation of an advertising proposal created by Liemer's group for the "Aqua Fresh" toothpaste product of SmithKline Beecham, one of Grey's largest accounts worldwide. At this meeting in the fall of 1992, which Liemer could not attend, Renz was responsible for presenting and reading the proposed commercials to both Grey account executives and representatives of the client. She read the advertisements in a flat and emotionless manner and did not adequately explain the different scenes in them. Richard Krain, the Grey executive in charge of the Aqua Fresh account, witnessed Renz's performance and testified that he was "embarrassed by the whole thing" and that "the meeting was a disaster." Krain also testified that a representative of the client conveyed similar sentiments about Renz's performance to him, telling him that "it was the worst presentation he had ever seen." After that meeting, Krain met with Liemer and informed him about Renz's poor presentation and the client's dissatisfaction with her work. Krain told Liemer that, from that point forward, Renz could not present advertising to this client without Liemer's presence.

The second episode concerned Renz's presentation of an advertising proposal for the "Banana Nut Crunch" cereal product of Kraft General Foods, one of Grey's most important clients. During this presentation in May 1993, attended by Grey account management personnel and high-level executives of the client, Renz again made a poor showing. Instead of presenting the commercial with the appropriate emotion and inflection, which is the presenter's job, Renz repeatedly stumbled over her words and read the advertisement haltingly, with a stammer, and in a monotone. Renz admitted on direct examination that this "was probably the worst presentation [she had] ever done." After this meeting, Jack Frantz, the Grey executive in charge of the Kraft General Foods account, told Liemer that he thought Renz's presentation was "horrible, terrible, [and] unsatisfactory." Frantz also informed Liemer that he did not want Renz to make any more presentations to this client, with or without Liemer's presence. Liemer agreed that after Renz completed her work for the Banana Nut Crunch commercial, she would no longer work on any General Foods business.

The third incident concerned Renz's work on the National Dairy Board account during 1992 and 1993. Dwight Leeper, the Grey executive in charge of this account, testified that Renz was "arrogant," "difficult to work with," and unwilling to "implement what the client saw as good advertising." Leeper met with Liemer and told him about these and other problems that the account management group was having with Renz. Leeper also informed Liemer that the client did not have confidence in Renz.

As a result of these and other difficulties concerning Renz's performance, Liemer met with Kevin Bergin, Grey's director of personnel, and other Grey executives in July 1993 to discuss Renz's future at Grey. They decided to place Renz on a probationary "evaluation period" for two months, and to reach a decision regarding her employment status in October of that year. Liemer and others

present during the July 1993 meeting testified that Liemer did not wish to discharge Renz, but wanted her to succeed as his second-in-command. After the meeting, Liemer met with Renz and informed her about some of the complaints concerning her job performance—most notably her poor presentation of advertising proposals and her inability to get along with Grey account executives and client representatives. Liemer eventually told Renz that if her performance in these areas did not improve by October 1st, she would be discharged.

Because Renz was not given sufficient opportunity to prove herself by October 1993, Grey and Liemer extended the deadline to March 1994. Renz was given several opportunities to present advertising campaigns to clients and to interact with them and Grey account executives during this period, but did not perform to Grey's satisfaction. For instance, at the presentation to the client of a National Dairy Board commercial containing music and lyrics, Renz, despite instructions from Liemer to sing the lyrics, simply read through the commercial. The Grey executives in charge of this account continued to be dissatisfied with Renz's work.

Renz was terminated in March 1994, less than two years after Liemer had selected her to join his group. She was 52 years old. Liemer hired Rhonda Peck, a 43–year–old female, to replace Renz. At the time Renz was discharged, Liemer had fourteen employees in his group. Five were female, ten were over the age of 40, and three were females over the age of 40.

Although Renz admits to some deficiencies concerning her presentation of advertising proposals and her rapport with clients and Grey account executives, she contends that she performed extremely well in her primary task of creating and writing advertisements and that her poor performance in the other aspects of her job did not play a role in Grey's decision to discharge her. She contends that Grey fired her because of her age, her gender, and her status as an older woman. Renz presented no direct evidence that prohibited discrimination of any kind played a role in her firing, however, and offered no supporting statistical evidence concerning the age and/or gender of the other employees in Liemer's group or in Grey generally. Rather, her entire case rested upon several comments made by Liemer that purportedly betray an age and/or gender bias on his part. These are set forth in the margin.[1] Renz conceded during her testimony that neither Liemer nor anyone else at Grey ever made a comment about or toward her that reflected age or gender bias.

Renz filed suit in September 1994, alleging that Grey discriminated against her on the basis of her age, her gender, and her status as an older woman, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1)-(2), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York Human

1. As summarized in Renz's appellate brief, Liemer's remarks allegedly demonstrating his age bias included the following:
   [1] Saying to [Renz] about the 37th floor receptionist Molly that he couldn't believe the agency would let someone like that represent it; the first thing a client sees when he gets off the elevator is somebody like that who is 100 years old;
   [2] Saying to [Renz] about one of Grey's female producers, Mora Dawsey, "do you know how old she is, she has white hair";
   [3] Saying to [Renz] about Catherine Land, another older female producer, that he couldn't believe that at her age she still worked 6 months per year;
   [4] Telling [Renz] that Barbara Barrow, another female producer who was in her 50's and had white hair, seemed old; and then asking whether there wasn't anyone under 60 who could produce a spot;
   [5] Calling Barbara Holbrook the oldest living Creative Director.
   Brief of Appellant at 7–8 (citations omitted). Two examples of Liemer's alleged gender bias are:
   [1] Mr. Liemer, in [Renz's] presence, imitated Grey Advertising Executive Carolyn Carter taking off her jacket and tossing her hair around, and did an impression of Ms. Carter showing off her surgically augmented breasts; and
   [2] On an occasion when [Renz] told Mr. Liemer she had been afraid at being in the office alone on a Sunday, saying what if the "mad rapist" had appeared, Mr. Liemer responded that he pitied the mad rapist because "he would have his you know what tied and dragging on the floor"....
   Id. at 8–9 (citations omitted).

Rights Law, N.Y. Exec. Law § 296(1)(a). At the conclusion of Renz's case, the District Judge granted Grey's motion for judgment as a matter of law on Renz's Title VII sex and "sex plus age" claims on the ground that she had failed to present sufficient evidence to support a reasonable inference that either her gender or her status as an older woman played a role in her termination. At the charge conference, Judge Metzner dismissed Renz's claim for emotional distress damages, made in connection with her state human rights law claim, on the grounds that she had waived this claim by failing to submit a proposed jury instruction on it and that there was insufficient evidence to support an award of such damages. The primary question presented to the jury concerned Renz's age discrimination claim.

The jury returned a verdict in favor of Grey, finding that Renz's discharge did not violate the ADEA.

### Discussion

The ADEA prohibits an employer from discharging an employee by reason of her age if she is at least 40 years old. *See* 29 U.S.C. §§ 623(a), 631(a). ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII." *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). Thus, in so-called "pretext" cases (more usefully labeled "single issue motivation" or "substantial motivation" cases, *see Fields v. New York State Office of Mental*

*Retardation and Developmental Disabilities,* 115 F.3d 116, 119, 124 & n. 4 (2d Cir.1997)), such as the one presently before us, the three-stage analysis set forth in Title VII cases such as *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) provides the appropriate framework.

With respect to plaintiff's burden at the third or ultimate stage of the *McDonnell Douglas/Burdine* analysis, Renz requested the District Court to charge the jury that the plaintiff need prove only that age was "a motivating reason" or "a determining factor" in the challenged employment decision. Rejecting this request, Judge Metzner repeatedly instructed the jury that the plaintiff was required to prove that age was "the real reason" for her discharge.[2]

Renz contended at trial, and now argues on appeal, that the instruction misstated the governing law. She contends that the phrase "the real reason" misled the jury into believing that an ADEA plaintiff was required to demonstrate that age was the sole or only factor motivating the employer's decision, whereas the law required her to prove only that age played a motivating or a determinative role in the employer's decision.

### 1. Was the Charge Erroneous?

■ We agree with Renz that the use of the phrase "age was *the real reason*" was

---

2. The charge included the following:

It is plaintiff's burden to prove by a fair preponderance of the evidence that her age was *the real reason* for the decision to terminate her employment.

In order for the plaintiff to succeed on her claim, she must prove by a fair preponderance of the evidence that, first, she was over the age of 40; second, she was qualified for the position; third, that she was discharged; and fourth, that the discharge occurred under circumstances giving rise to an inference of age discrimination.
....
... [I]f you find that the plaintiff has established these elements by a fair preponderance of the evidence, you have to consider whether the dismissal of the plaintiff was based on a legitimate, non-discriminatory reason.

If you find that the defendant has articulated a legitimate, non-discriminatory reason, then

the plaintiff, in order to obtain a favorable verdict, must prove by a fair preponderance of the evidence that the reasons offered by the defendant for the discharge were not the true reasons, but that those reasons were a pretext for discriminatory acts on the part of the defendant, and that the plaintiff's age was *the real reason* for the discharge of the plaintiff, and that the defendant knowingly and purposefully discriminated against her because of her age.

In considering Grey's stated reason for discharging the plaintiff, you are not to second-guess the wisdom or reasonableness of defendant's business decisions....

Defendant had the right to discharge the plaintiff for any reason or no reason so long as age was not *the real reason* for the discharge.
Joint Appendix at 604–06 (emphases added).

erroneous.[3] First, it is well settled that an ADEA plaintiff need not prove that age was the only or even the principal reason for the complained-of employment action. Rather, the plaintiff is entitled to prevail if she demonstrates that her age played a motivating role in, or contributed to, the employer's decision. *See, e.g., Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196, 203 (2d Cir.1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.") (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (plurality opinion)); *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 508 (2d Cir.1994) (same); *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314, 317 (2d Cir.1992) (same); *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 105 (2d Cir.1989) (same); *Paolillo v. Dresser Industries, Inc.,* 865 F.2d 37, 40 (2d Cir.) (same), *amended,* 884 F.2d 707 (2d Cir. 1989); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983) (same); *see also Fields,* 115 F.3d at 120 (Title VII).

Second, we agree with Renz that the phrase used by the District Judge—"age was the real reason"—failed to convey the proper standard of proof and risked inducing the jury to believe that Renz was required to prove that her age was the sole motivation behind Grey's decision to terminate her. Placing the article "the" in front of a word connotes the singularity of the word modi-

fied. This is especially so when this article is combined with the adjective "real." The most plausible meaning of the entire phrase is that the modified noun (here "reason") is the only or principal one of its kind. Thus, a likely implication of the phrase "age was the real reason" is that age was the sole or primary reason for the employer's action. In contrast, the use of the indefinite article "a" implies that the modified noun is but one of several of that kind. The phrase "age was a motivating factor" would have properly suggested that age was one of the *considerations* motivating the employer's decision.

We confirmed this common-sense reading of the phrase "age was the real reason" in *Paolillo.* The instruction in that case had included the phrase "the real reason." [4] Rejecting the trial court's use of this phrase, we said:

> [T]he court's use of the word "real" was confusing in that it failed to explain to the jury that age need not be the principal reason for [the defendant's] decision to implement the elective termination program, but only a factor that made a difference.

865 F.2d at 40, *amended,* 884 F.2d at 707. As we reiterated in a subsequent opinion, "[o]ur concern in *Paolillo* was that the use of the word 'real' suggested that age had to be the principal factor motivating the employer's decision." *Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1376 (2d Cir.1989); *see also Zaken v. Boerer,* 964 F.2d 1319, 1325 (2d Cir.1992).

**3.** We note that the District Court's charge erred in a second respect unnoticed by Renz. Judge Metzner improperly informed the jury that Renz had the burden of proving *both* that her termination was motivated by discrimination and that Grey's proffered reasons for Renz's discharge were false. Though a discrimination plaintiff may not succeed by proving only that a proffered explanation is false but must prove that discrimination motivated the adverse action, the plaintiff is entitled to succeed by proving discriminatory motivation without proving that a proffered explanation is false. *See Fields,* 115 F.3d at 121. This simply recognizes that adverse employment action creates liability when discrimination substantially motivates the action, even though some legitimate factor might also contribute to the employer's motivation.

Because Renz did not state this objection at trial and fails to make this argument on appeal, we decline to consider what effect, if any, this error might have had on the verdict. *See* Fed. R.Civ.P. 51; *Johnson v. New York Hospital,* 96 F.3d 33, 34 (2d Cir.1996).

**4.** The instruction included the following:

> In order to conclude that the reason given in this case for the Defendant's decision ... [was] a pretext for age discrimination, you must find that the Defendant intentionally misstated those reasons, and that the reasons given were not true, and that *the real reason for the decision was the plaintiff's age.*

*Paolillo,* 865 F.2d at 40 (emphasis added).

Grey's reliance on prior decisions of this Circuit using the phrase "age was the real reason," though understandable, is unavailing. In *Woroski*, for instance, in affirming a grant of summary judgment to the employer, we stated that "the plaintiff has the burden of proving that his *age was the real reason* for the discharge." 31 F.3d at 108 (emphasis added); *see also Viola v. Philips Medical Systems of North America*, 42 F.3d 712, 716–17 (2d Cir.1994); *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1225–26 (2d Cir.1994). First, it is important to note that in all of these cases, the question before the Court was whether *summary judgment* in favor of the employer was properly granted. We were not considering the proper wording of a jury charge. As we have previously cautioned in a related context, trial judges should not "import[ ] uncritically" language used in the traditional *Burdine* or *McDonnell Douglas* formulation into jury charges because such language—developed by appellate courts for use by judges—is "at best irrelevant, and at worst misleading to a jury." *Cabrera v. Jakabovitz*, 24 F.3d 372, 380 (2d Cir.1994).

■ Moreover, as we recently noted in a Title VII case, in some, but not all, "single issue motivation cases" (meaning that the fact-finder decides only the single issue of whether an impermissible reason was a substantial motivation of the adverse employment action and is not asked to go on to a second issue of whether the employer would have taken the same action for a permissible reason), "both sides agree that there is only one motivation, and the issue is whether it was [the prohibited factor] *or* the [employer's proffered non-discriminatory reason]." *Fields*, 115 F.3d at 120 (emphasis added). In the context of such cases, it is understanda-

ble that a court would say that the issue is whether an impermissible factor was "the real reason" for the complained-of employment action. *Cf. id.* at 120 (where plaintiff claims that he was fired because of his race, and the employer responds that he was fired because of his propensity for lateness, and "both sides agree that there is only one motivation, . . . [i]f the plaintiff proves that the adverse action was motivated by race, he has necessarily disproved that it was motivated by lateness"). However, where, as here, an employee acknowledges the existence of a permissible factor, poor performance, that might have *contributed* to the employer's motivation, but contends that an impermissible factor was also a substantial component of the motivation, jury charge language that might be acceptable for an "either/or" type of "single issue motivation case" is not appropriate.[5]

### 2. Was the Jury Charge Error Harmless?

■ We affirm the judgment of the District Court, however, because we conclude that the erroneous charge did not prejudice the plaintiff. *See* Fed.R.Civ.P. 61; *see also Leucadia, Inc. v. Reliance Insurance Co.*, 864 F.2d 964, 972–74 (2d Cir.1988). Although it is well settled that the party asserting error has the "burden of demonstrating prejudice requiring reversal," *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir.1992), the standard of proof regarding harmlessness has been variously stated. *See 12 Moore's Federal Practice*, § 61.02[3] (3d ed.1997). Some recent formulations, for instance, "require the party claiming error to show that it is 'highly probable' that the error affected the party's rights, that the error 'affected a

5. We note that the phrase "age was the real reason," first used in *Gallo* and subsequently repeated in *Woroski* and *Viola*, represents an extension of a phrase found in the Supreme Court's decision in *St. Mary's*, from which the phrase derives. *See Gallo*, 22 F.3d at 1226 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The phrase used in *St. Mary's* is that the plaintiff must demonstrate that "*discrimination* was the real reason," 509 U.S. at 515, 113 S.Ct. at 2751 (emphasis added), not that "*age* was the real reason." *St. Mary's*, like *Woroski*, was con-

cerned with the propriety of granting summary judgment, rather than the framing of a jury instruction. Moreover, it may have used the wording "discrimination was the real reason" only to indicate generally *what* the plaintiff must demonstrate in order to prevail (*i.e.*, discrimination), rather than to indicate *how* the plaintiff must prove discrimination. As we discussed earlier, a Title VII or ADEA plaintiff proves discrimination by demonstrating that race, gender, or age played a motivating role in the employer's decision.

party's rights to a substantial degree,' [or] that the verdict 'more probably than not' was tainted . . . ." *Id.* (citations omitted). We need not select from among these formulations because, upon a review of the evidence and testimony presented at trial, we conclude that under these or any other commonly used version of the harmless error standard, the error in the jury charge was harmless.

Renz's sole evidence of age discrimination consisted of isolated remarks allegedly made by Liemer commenting critically on the ages of several female employees. Although inappropriate, none of these comments was directed at Renz. In *Woroski*, we affirmed the district court's grant of summary judgment to the employer, despite evidence showing that the person responsible for staff reductions had made several comments generally disparaging older employees, because the evidence was overwhelming that the plaintiff was laid off for non-discriminatory reasons. 31 F.3d at 109–10. The same is true here. Grey's evidence that it discharged Renz because of poor performance is so strong that a correct charge on the plaintiff's standard of proof in her ADEA claim would not have made a difference to the verdict.

We list several considerations supporting our conclusion. First, Renz does not dispute that she performed poorly during several crucial presentations to clients and that she did not interact well with some Grey account executives and client representatives. Renz conceded on direct examination, for instances, that her presentation of the Banana Nut Crunch advertising proposal "was probably the worst presentation [she had] ever done." Regarding her work on the National Dairy Board campaign, Renz conceded that she did not conform her work to the client's stated rules regarding proper advertisements, and did not dispute a Grey executive's testimony that there was little rapport between Renz and either the client or the Grey management group in charge of this account. Moreover, testimony by the Grey executive in charge of the Aqua Fresh account describing Renz's presentation of an advertisement proposal to the client as a "disaster," and his testimony that the client had told him that Renz's presentation "was the worst presenta-

tion he had ever seen," went unrebutted. Therefore, by the summer of 1993, as a result of her poor performance on the Banana Nut Crunch and Aqua Fresh accounts—two of the largest handled by Liemer's group—Renz was barred from presenting advertising to or otherwise meeting with the SmithKline Beecham client without Liemer's presence, and could not work on any Kraft General Foods business.

More generally, the context in which the discharge occurred heavily supports Grey's position. Grey hired Renz when she was almost 50 years old, and Liemer selected Renz to serve as his second-in-command when she was almost 51 years old. Liemer terminated the employment of a 46–year–old employee to accommodate Renz's transfer into his group. Liemer gave Renz a very positive review of her performance in November 1992, when she was 51 years old. When Renz was discharged, ten of the fourteen or so employees in Liemer's group were over the age of 40.

Taking into consideration all of the evidence and testimony presented at trial, we are firmly convinced that, even if correctly charged, the jury would not have found that Renz's age played a role in Grey's decision to discharge her. Because the erroneous instruction did not substantially affect Renz's rights, *see* Fed.R.Civ.P. 61, we affirm the judgment of the District Court.

### Conclusion

Renz's claims, apart from the jury charge issue, are rejected in a summary order filed this date. The judgment of the District Court is affirmed.