Henry M. WALLENGREN, Plaintiff,

v.

SAMUEL FRENCH, INC. and Charles Van Nostrand, Defendants.

No. 97 Civ 0528(RLC).

United States District Court,
S.D. New York.

Feb. 11, 1999.

Meyers Tersigni Feldman & Gray, New York City, Richard N. Gray, of counsel, for plaintiff.

Deutsch Klagsbrun & Blasband, New York City, David Blasband, of counsel, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

This action arises from defendants' termination of plaintiff's employment, allegedly in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), and the New York State Human Rights Law, N.Y.Exec.Law § 290 et seq. (the "NYSHRL"). Now before the court is defendants' motion for summary judgment.

## BACKGROUND

Defendant Charles Van Nostrand ("Van Nostrand"), president of co-defendant Samuel French, Inc. ("Samuel French"), hired plaintiff Henry M. Wallengren ("Wallengren") as his assistant in March, 1992. Samuel French is a publisher and licensor of dramatic and musical plays. Wallengren's responsibilities as Van Nostrand's assistant included corresponding with authors, and with agents, individuals, and organizations seeking to license plays that Samuel French publishes, and generally responding to questions from employees, agents, writers, theaters, and others about a wide variety of matters relating to the company.

In May, 1994, during a bout with PCP pneumonia, Wallengren learned that he had AIDS. Prior to this time, he was not aware that he was HIV positive. In January, 1995, Wallengren informed Van Nostrand that he had AIDS after Van Nostrand inquired about recent illness-related absences. Allegedly, Van Nostrand's immediate reaction to plaintiff's disclosure was, in substance: "This could cost the company a lot of money." (Wallengren Aff. ¶ 4). According to Wallengren, this statement was the beginning of Van Nostrand's subtle yet undeniably discriminatory behavior toward him due to his disclosed AIDS condition. While his duties as assistant remained the same, Wallengren asserts that his relationship with Van Nostrand substantially deteriorated. (Wallengren Aff. ¶ 7). Van Nostrand no longer confided in Wallengren, nor solicited his opinions on broader matters regarding the operation and direction of Samuel French. (Wallengren Aff. ¶ 7). Wallengren was no longer invited to meetings that he had previously attended. (Wallengren Aff. ¶ 7). Furthermore, Wallengren and Van Nostrand no longer attended dinner and theater together every Wednesday night, as they had since the beginning of Wallengren's employment in 1992; such occasions were reduced to

three times, or often two times, a month. (Wallengren Aff. ¶ 7). However, while his role at Samuel French may have diminished, Wallengren continued to receive pay raises, one increasing his salary from $49,-530 to $54,483 in March, 1995 and another increasing his salary to $59,943 in October, 1995, and bonuses, totaling approximately $10,000 for 1995. (Van Nostrand Aff. ¶ 11).

In light of Van Nostrand's allegedly discriminatory treatment following the disclosure of his AIDS condition, Wallengren began to explore the possibility of other employment opportunities, including opportunities with Samuel French competitors. (Wallengren Dep. at 167). On Thursday, February 15, 1996, Van Nostrand became aware of Wallengren's exploration of other employment while opening all Samuel French mail when he opened a letter by Heather MacDonald ("MacDonald"), some of whose plays are published by Samuel French, addressed to Wallengren. In the letter, MacDonald stated: "Yes, I'm interested in where you are going as far as another publishing house." (Van Nostrand Aff.Ex. 6). Van Nostrand confronted Wallengren with the letter that same morning, and asked whether plaintiff was going to join a competitor. Wallengren responded, in essence: "I'm not stealing your authors, because I have no place to steal them to. I'm working for you. I'm not working elsewhere." (Wallengren Dep. at 166, 167). Wallengren asserts that he and Van Nostrand met again that day, at which time Van Nostrand accused Wallengren of having a poor attitude, and claimed that he had heard from unidentified sources that Wallengren was "rude" and "unhelpful." (Wallengren Aff. ¶ 11). Additionally, Wallengren claims that Van Nostrand commented that he did not know whether to attribute Wallengren's poor reputation and attitude to Wallengren's "medication or illness." (Wallengren Aff. ¶ 6).

Regardless, Wallengren and Van Nostrand agreed to meet again to discuss the matter on Tuesday, February 20, 1996, the next day that both were scheduled to be in the office. Van Nostrand alleges that in the intervening days between February 15 and February 20, he was informed by multiple sources that Wallengren had scheduled a meeting at Music Theater International ("MTI"), a Samuel French competitor, with the purpose of proposing that MTI establish a non-musical play division. (Van Nostrand Aff. ¶ 6). Van Nostrand states that upon learning of this meeting and of Wallengren's disloyalty to Samuel French, he decided to fire the plaintiff. (Van Nostrand Aff. ¶ 20). Van Nostrand personally fired Wallengren, effective immediately, on February 20, 1996 without a verbal or written explanation as to cause. (Wallengren Aff. ¶ 16).

Wallengren does not deny that he had discussions with MTI about the possibility of establishing a non-musical play division. Indeed, defendants have submitted several documents written by Wallengren in December 1995 and January 1996 concerning the proposal; many of those documents contain disparaging remarks about Samuel French and Van Nostrand. (Van Nostrand Aff.Ex. 13–16). However, Wallengren vigorously contests Van Nostrand's claim that Van Nostrand knew about the proposal on the day Wallengren was fired. Wallengren contends that Van Nostrand's knowledge of the MTI proposal came to fruition some time after his termination, perhaps through discovery.

Wallengren filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 29, 1996, which Van Nostrand responded to in April, 1996. Wallengren subsequently received a Notice of a Right to Sue letter from the EEOC on December 9, 1996, and filed a complaint in this court on January 24, 1997. Wallengren alleges that he was terminated on the basis of disability, namely, his AIDS condition, in violation of the ADA and the NYSHRL. Van Nostrand denies that Wallengren's AIDS condition had any influence in his decision to

terminate, and asserts that he properly fired plaintiff due to his disloyalty to Samuel French. Accordingly, defendants now move for summary judgment pursuant to Rule 56, F.R.Civ.P.

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56(c), F.R.Civ.P., summary judgment is rendered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." "[T]he substantive law will identify which facts are material ... [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine issue of material fact exists rests on the party seeking summary judgment. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Furthermore, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223 (2d Cir. 1994). Thus, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987). On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are any issues to be tried." *Chambers*, 43 F.3d at 36–37 (quoting *Donahue*, 834 F.2d at 58).

■ Additional considerations should be taken into account when deciding whether summary judgment is appropriate in an employment discrimination case. *See Gallo*, 22 F.3d at 1224. When an employer's intent, motivation, or state of mind is at issue, summary judgment should be granted sparingly. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment is "ordinarily inappropriate where an individual's intent and state of mind are implicated."). Nevertheless, the plaintiff must offer " 'concrete evidence from which a reasonable juror could return a verdict in his favor.' " *Dister*, 859 F.2d at 1114 (quoting *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505).

### II. ADA

Title I of the ADA prohibits discrimination by certain private employers against qualified individuals with disabilities because of such disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112. When considering discrimination claims brought under the ADA, courts employ the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998). Under the *McDonnell Douglas* analysis, the plaintiff must initially prove by a preponderance of the evidence a prima facie case of discrimination. *See id.; Dister*, 859 F.2d at 1112. Proof of a prima facie case creates a presumption that the employer discriminated against the employee in an unlawful manner, *see Greenway*, 143 F.3d at 52, and plaintiff's burden at this stage is de minimis. *See Fisher v. Vassar College*, 114 F.3d 1332, 1340 n. 7 (2d Cir.1997) (collecting cases). Once the plaintiff meets his de minimis burden, the burden of production shifts to the defendants who must articulate a legitimate, nondiscriminatory reason for their actions. *See Chambers*, 43 F.3d at 38; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). The defendants need not persuade the court that they were actually motivated by the proffered reason to meet their burden, *see Dister*,

859 F.2d at 1112, but if the defendants are successful in meeting their burden, the presumption of discrimination drops out of the case. *See Gallo,* 22 F.3d at 1224–25. The burden then rests on the plaintiff to persuade the trier of fact that, more likely than not, the true reason was intentional discrimination. *See Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 121 (2d Cir.1997).

### a. Plaintiff's prima facie case

In order to make out a prima facie case of discriminatory discharge under the ADA, the plaintiff must demonstrate that: "(1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability." *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 149–50 (2d Cir. 1998).

Defendants first contest plaintiff's claim that he suffers from a disability within the meaning of the ADA. Under the ADA, "disability" is defined as the following:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2).

In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the United States Supreme Court noted that infection with HIV causes immediate abnormalities in a person's blood, and that the infected person's white cell count continues to drop throughout the course of the disease, resulting in the deterioration of the body's ability to fight infections from many sources and, ultimately, death. *See id.* 118 S.Ct. at 2203–04. Accordingly, the Court held that the HIV infection "satisfies the statutory and regulatory definition of a physical impairment [under the ADA] during every stage of the disease." *Id.* at 2204.

█ Furthermore, EEOC administrative regulations implementing the ADA define the term "substantially limits" to mean, in relevant part: "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). "Working" is defined as a major life activity under the EEOC regulations. 29 C.F.R. § 1630.2(i). In light of the substantially limiting effects of HIV and AIDS, as identified in *Bragdon,* on an individual's ability to work, the court finds that plaintiff's AIDS condition is well within the meaning of "disability" under the ADA. *See also Greenway,* 143 F.3d at 53 (affirming jury's finding of employer's liability in AIDS discrimination case); *Disanto v. McGraw–Hill, Inc./Platt's Div.,* 1998 WL 474136, at *6, n. 4 (S.D.N.Y. Aug.10, 1998) (Koeltl, J.) (denying employer's summary judgment motion in HIV discrimination case).

Defendants next contend that plaintiff is not a "qualified individual" under the ADA. Under the ADA, an individual is "qualified" if he "with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." The court is also mindful that *McDonnell Douglas* requires only a "minimal showing of [job] qualification to establish a prima facie claim." *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 409 (2d Cir. 1991).

█ Defendants do not dispute that up until the moment that Van Nostrand allegedly learned of plaintiff's proposal to MTI, Van Nostrand believed Wallengren to be a competent employee and had no intention of terminating him. Van Nostrand states:

"[w]hile Mr. Wallengren was far from a perfect employee, he did many things very well, for which he was amply rewarded.... I had no intention of terminating him until I learned of his disloyalty." (Van Nostrand Aff. ¶ 28). Nevertheless, defendants argue that plaintiff's disloyal act rendered him automatically "unqualified" to perform his job.

Certainly, the disloyal act, assuming that defendants had knowledge of it at the time of termination, is relevant to the underlying inquiry as to whether plaintiff was terminated for a legitimate and nondiscriminatory reason. However, the act does not preclude Wallengren from demonstrating that he was qualified for employment with Samuel French. Wallengren's act is similar to "misconduct," i.e., inappropriate or insubordinate behavior, which does not "by the same token establish 'unsatisfactory performance.'" *Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 29 (2d Cir.1997) (discussing *Owens,* 934 F.2d at 409). Rather, the disloyal act, like misconduct, is "distinct ... from the issue of minimal qualification to perform a job." *Owens,* 934 F.2d at 409. As Van Nostrand has acknowledged that, despite some flaws, Wallengren was competent at his job, the court finds that plaintiff has demonstrated that he is a "qualified individual" under the ADA. *See also id.* (plaintiff need only show that he "possesses the basic skills necessary for performance of [the] job.").

Finally, plaintiff must demonstrate, in order to make out his prima facie case, that the circumstances surrounding his discharge give rise to an inference of discrimination. *See Chambers,* 43 F.3d at 37. The court is mindful that because direct evidence of intentional discrimination is rarely if ever found, victims of discrimination must often rely on circumstantial evidence to prove their claims. *See, e.g., id.,* 43 F.3d at 37; *Gallo,* 22 F.3d at 1224 ("[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.").

■ In the instant case, plaintiff has alleged that Van Nostrand made comments that, when taken at face value, reflect discriminatory animus against persons with HIV/AIDS. In particular, plaintiff emphasizes Van Nostrand's alleged comment that he did not know whether to attribute Wallengren's poor reputation and attitude to Wallengren's "medication or illness." Defendants argue, however, that the comment and others alleged by plaintiff are "stray remarks" insufficient to give rise to an inference of discrimination. *See, e.g., Balut v. Loral Electronic Sys.,* 988 F.Supp. 339, 348–49 (S.D.N.Y.1997) (Connor, J.) (employer's reference to "an older engineer with health problems" did not create inference of discrimination). *See also Woroski,* 31 F.3d at 109–10, n. 2 (employer's criticism of older workers not directed at plaintiffs did not create inference); *Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 220–21 (2d Cir.1997) (comments not directed at plaintiff nor about plaintiff did not create inference).

Nevertheless, the court finds Van Nostrand's alleged comment regarding plaintiff's illness and his poor attitude is sufficient to give rise to an inference of discrimination. Unlike the comments at issue in *Balut, Woroski,* and *Renz,* Van Nostrand's comment was directed at plaintiff, in connection with his work skills, and during the time period immediately prior to his discharge. *See Cartagena v. Ogden Services Corp.,* 995 F.Supp. 459, 463 (S.D.N.Y.1998) (Sotomayor, J.) (denying summary judgment).

### b. Defendants' legitimate, nondiscriminatory reason

■ Plaintiff having made his prima facie case of discriminatory discharge, the burden now shifts to defendants to produce evidence of a legitimate, nondiscriminatory reason for termination. *See Dister,* 859 F.2d at 1112. Defendants' articulated

reason for the termination is plaintiff's proposal to MTI that it establish a non-musical play division, which defendants reasonably believed would have competed with Samuel French.[1] Thus, defendants have met their burden of production by articulating a legitimate, nondiscriminatory reason for the termination: plaintiff's disloyal act of proposing the establishment of a play division at a Samuel French competitor.

### c. Plaintiff's opportunity to show pretext

■ Plaintiff may demonstrate that the nondiscriminatory reason articulated by defendants was merely a pretext for discrimination by "the presentation of additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' or by reliance on the evidence comprising the prima facie case, without more." *Chambers*, 43 F.3d at 38 (citing *Texas Dep't of Community Affairs v. Bur-*

*dine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). While the plaintiff is not required to show that the employer's reason was pretextual in order to prevail, *see Fields*, 115 F.3d at 121, "[t]he factfinder's disbelief of the reasons put forward by the defendant[s] (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742. However, while rejection of the employer's proffered reason will permit the trier of fact to infer the ultimate fact of discrimination without additional proof, it does not compel judgment for the plaintiff. *See id.* The burden of persuading the trier of fact of intentional discrimination remains at all times on the plaintiff.[2] *See id.; Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir.1997).

---

1. Defendants have also submitted work-related documents written by plaintiff that contain obscenities, derogatory comments about Samuel French and Van Nostrand, and other improper remarks. (Van Nostrand Aff.Ex. 1–5, 7, 10). However, because Van Nostrand states that he had "no intention of terminating him until I learned of his disloyalty," (Van Nostrand Aff. ¶ 28), and does not claim that the behavior reflected by those documents formed any part of the decision to fire plaintiff at the time, the court finds these documents to be immaterial for the purposes of deciding this motion for summary judgment. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359–60, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) ("[P]roving that the same decision would have been justified . . . is not the same as proving the same decision would have been made.").

2. The sides disagree as to whether the ADA, like the Rehabilitation Act of 1973, requires plaintiff to demonstrate that he was fired "solely" on the basis of his disability. Plaintiff argues that the ADA is similar to Title VII and the Age Discrimination in Employment Act ("ADEA") in that a plaintiff must merely show that the impermissible reason was a "substantial" or "motivating" factor, or "made a difference" in the decision. *See Fields*, 115 F.3d at 120 (citations omitted); *Renz*, 135 F.3d at 222 (ADEA plaintiff is "enti-

tled to prevail if she demonstrates that her age played a motivating role in, or contributed to, the employer's decision."). The Second Circuit has not yet made an express ruling on this issue; however, the court finds instructive its recent decision, *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998), in which the Circuit discussed jury charges in an ADA employment discrimination action. In *Greenway*, the Circuit Court, in upholding the jury's determination that the employer had terminated plaintiff because of his HIV condition, stated that the ultimate question before the trier of fact was this: "has the plaintiff proved that it is more likely than not that he or she was subjected to the adverse employment action *based on an illegal discriminatory motive*?" *Id.* at 53 (citing *St. Mary's Honor Center*, 509 U.S. at 511, 113 S.Ct. 2742) (emphasis added). Given the indication in *Greenway* that an ADA plaintiff need not prove that he was "solely" fired because of his disability, the court concludes that such a plaintiff need only demonstrate that his disability was a "motivating" factor in the employer's decision.

However, the court emphasizes that in the instant case, the resolution of this dispute over the ADA's requirement that the disability be the "sole" versus "motivating" factor is not determinative. Here, the parties agree that there is only one motivation, and the

Plaintiff contends that defendants were not aware of his MTI proposal at the time of his termination, and thus could not have fired him for his disloyalty. Plaintiff points out that he was not given an explanation at the time of his termination; that Van Nostrand states that he was told by several industry agents about plaintiff's proposal, but cannot name any of them except Bridget Aschenberg, an agent of International Creative Management; that Aschenberg has not submitted an affidavit stating that she told defendants about plaintiff's proposal prior to his termination; and that there are inconsistencies between Van Nostrand's EEOC response and the papers that defendants have submitted in this case. Defendants counter with two affidavits, one by Van Nostrand and another by Alleen Hussung, the head of Samuel French's Professional Licensing Department, stating that defendants were made aware of plaintiff's proposal to MTI before the termination. Defendants also note that Wallengren's AIDS condition would not have increased Samuel French's insurance rates, thus discounting the discriminatory inference of Van Nostrand's alleged statement concerning Wallengren's illness costing the company money. Furthermore, defendants argue that the fact that Wallengren received raises and bonuses after he disclosed his AIDS condition demonstrates that Van Nostrand did not have the requisite discriminatory animus. *See, e.g., Boyle v. McCann–Erickson, Inc.,* 949

F.Supp. 1095, 1104 (S.D.N.Y.1997) (Batts, J.) (finding the fact that plaintiff received salary increases on a regular basis undercut inference of discrimination).

In determining a summary judgment motion, "the court is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact," *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (collecting cases), and must draw all factual inferences in favor of the non-moving party, viewing the factual assertions in the affidavits, depositions, and exhibits in the light most favorable to the non-moving party. *See id.* At the same time, a party may not "rely on mere speculation or conjecture to overcome a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

■ While the question is a close one, the court concludes that summary judgment is inappropriate. Although plaintiff's disloyalty would have been grounds for immediate termination, it remains a question for the jury to determine whether defendants did indeed know about the MTI proposal at the time. This determination will essentially turn on an assessment of credibility. Defendants claim that they had knowledge of plaintiff's disloyalty, and that plaintiff is merely speculating that they did not. However, given the lack of a contemporaneous written notice explaining the reason for plaintiff's termi-

issue is whether it was the prohibitive factor, or the employer's proffered nondiscriminatory reason. Defendants claim that plaintiff was fired for his disloyalty; and plaintiff contends that defendants did not know about his proposal to MTI, and that the real reason for his termination was his AIDS condition. *Compare Renz,* 135 F.3d at 223 (where the employee acknowledged the existence of a permissible factor, poor performance, that might have contributed to the employer's motivation, but contends that an impermissible factor was also a substantial component of the motivation). Given the egregious nature of the act that formed the basis of defendants' proffered nondiscriminatory reason for termination, no reasonable factfinder could find that the permissible and forbidden motives

co-existed; that is, the evidence does not support a finding that defendants would have tolerated such an action by a non-disabled employee, but not by a disabled employee. *See, e.g., Ostrowski v. Atlantic Mutual Insurance Companies,* 968 F.2d 171, 185 (2d Cir. 1992) (giving example where defendant establishes that plaintiff had embezzled funds, it would be unreasonable for the factfinder to conclude that age discrimination played a role, because the evidence would be unlikely to permit a reasonable finding that the employer was determined to discharge only elderly embezzlers). Thus, the distinction between "sole" and "motivating" factor is not determinative in this case, as proof of one motive necessarily disproves the other. *See Fields,* 115 F.3d at 120.

nation and plaintiff's sworn testimony regarding the alleged discriminatory treatment he received after the disclosure of his AIDS condition and Van Nostrand's comments that, if said, reflect discriminatory animus,[3] a reasonable jury could infer that defendants' assertions regarding their knowledge of the MTI proposal prior to the termination are false, and that Van Nostrand decided to fire plaintiff because of his disability. Summary judgment is therefore improper.

## III. NYSHRL

As there is "no difference between the quantum or elements of proof required by the ADA and the NYSHRL," *Mohamed v. Marriott Int'l*, 905 F.Supp. 141, 156 (S.D.N.Y.1995) (Sweet, J.), summary judgment is also denied with regard to plaintiff's state claim.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied. Parties are to submit a Joint Pretrial Order by March 5, 1999.

**IT IS SO ORDERED.**

---

3. Defendants assert that even if Van Nostrand had indeed said that he did not know whether to attribute plaintiff's poor attitude to plaintiff's medication or illness, that such a statement would have been "fully warranted and permissible," given evidence of plaintiff's admittedly rude comments on some occasions. (Mem. of Law in Supp. of Defs.' Mot. for Summ.J., at 27). However, the court emphasizes that while an employer is certainly allowed to criticize an employee, it may not attribute poor performance to an employee's legally protected status based on the employer's discriminatory animus. Van Nostrand's alleged comment suggests exactly such an attribution. *See also Cartagena*, 995 F.Supp. at 460, 463 (finding that employer's alleged comment, "You fucking Puerto Rican can't do the job right," while criticizing plaintiff's work could directly reflect discriminatory animus).