**Nelson VIOLA, Plaintiff–Appellant,**

v.

**PHILIPS MEDICAL SYSTEMS OF NORTH AMERICA & North American Philips Corporation, Defendants–Appellees.**

No. 350, Docket 94–7174.

United States Court of Appeals, Second Circuit.

Argued Sept. 28, 1994.

Decided Dec. 7, 1994.

Brian A. Mangines, Mangines & Mangines, Fairfield, CT, for plaintiff-appellant.

Margaret M. Sheahan, Durant, Sabanosh, Nichols & Houston, P.C., Bridgeport, CT, for defendants-appellees.

Before WINTER, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge:

After twelve years of employment, plaintiff-appellant Nelson Viola was dismissed during a company-wide reduction in work force. Viola's complaint alleges that his employers, the defendants Philips Medical Systems, N.A. and North American Philips Corp., unlawfully terminated his employment by reason of his age in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq. The District Court for the District of Connecticut (Daly, J.) granted summary judgment to defendants, on the ground that Viola failed to offer any evidence that age was a factor in his discharge and thus failed to raise triable issues of fact that defendants' employment decision was motivated by age. Viola relies exclusively on the following circumstances to create an inference of age discrimination: an unsatisfactory evaluation of Viola's work entered shortly before the reduction in force; the transfer of a younger co-worker shortly before the reduction in force to replace one of the three persons then performing Viola's role; and the hiring of a new employee, within twelve months after Viola was let go, to perform many of Viola's former duties. We conclude that these circumstances suffice to require an employer to come forward with an age-neutral justification for the discharge. Here, the employer has rebutted Viola's prima facie case with evidence that Viola was fired in a company-wide reduction in force and selected for discharge on a basis consistent with company termination procedures that do not discriminate against older workers. Standing alone, the circumstances alleged by Viola fail to raise a jury question as to whether the real motivation for his discharge was Viola's age. We therefore affirm.

## I. Background

Few events are in dispute. We recount here the facts bearing upon the issues to be resolved on appeal, cast in the light most favorable to Viola as the party against whom summary judgment has been granted.

Philips Medical Systems, N.A. ("PMSNA") hired Nelson Viola on September 24, 1979 to work in the stock room of its Spare Parts Department. Viola was then 46 years old. In 1981 Viola was promoted to Coordinator. In late 1987 Viola briefly assumed the position of Order Administrator; however, at his own request, Viola returned to the Spare Parts Division in January 1988 as an Expeditor. Viola remained an Expeditor until his discharge on January 1, 1991 at age 57.

During Viola's twelve year tenure, annual performance evaluations were prepared for employees as part of PMSNA's Performance Appraisal Program. Job performance was rated on a four-part scale—outstanding, excellent, fully effective or needs improvement. The performance trend was rated on a three-part scale—improving, stable or declining. The supervisor was instructed to contact the personnel department whenever an employee

received a "needs improvement" evaluation and a "declining" performance trend. After each performance review, the employee read and signed the evaluation and was entitled to submit a written objection, explanation or amendment. Until September 20, 1990, Viola had consistently been rated as "fully effective". Viola received his last review three months prior to his termination. Supervisor James O'Connell advised Viola that he "need[ed] improvement" but that his performance was "improving". Viola did not file a written comment in response to this evaluation, although he had filed such comments following past reviews.

In November or December of 1990, the executive management of PMSNA undertook a reorganization plan calling for a general reduction in the work force. Termination of union employees was governed by the collective bargaining agreement. Termination of non-union employees was governed by guidelines devised for the reduction in force. Applying those guidelines, termination decisions would be made on the basis of function, performance and seniority. First, each manager was to identify functional areas that could be consolidated or pruned. Employees in those areas were selected for termination based on their performance reviews, with employees "need[ing] improvement" being the first to go. In the event of a tie, the more senior would be retained.

In the fall of 1990, PMSNA employed three Expeditors in the Spare Parts Department: Trish O'Brien, Karen O'Donnell and Viola. When Ms. O'Brien's position became vacant, it was filled by Belinda Pacowta "sometime around or after December 1st in 1990." Ms. Pacowta, who was much younger than Viola, had originally been hired by PMSNA on April 3, 1989 as an Inventory Control Clerk. In April 1990 she received a performance appraisal of "fully effective" and "improving". Thus the complement of Expeditors at the time of the reduction in force consisted of Pacowta, O'Donnell and Viola.

Philip Castagna, the director-level manager in charge of the Spare Parts Department, identified four departmental positions to be eliminated, including one of the three Expeditors. Viola, having received a "needs improvement" rating on his most recent performance review, was singled out for termination. Thus, as a result of the 1990 reviews, Viola was dismissed on January 1, 1991 and Pacowta was retained.

As part of PMSNA's reorganization, the positions of Coordinator and Expeditor were consolidated into the single role of Coordinator Expeditor. In December, 1991, PMSNA hired a new employee as Coordinator Expeditor for the Logistics and Repair Department. The duties of this new employee in some part overlapped with Viola's work as an Expeditor.

On July 13, 1992, Viola filed a complaint alleging that PMSNA violated the ADEA by wrongfully terminating him on the basis of his age. PMSNA's March 29, 1993 motion for summary judgment was referred to Magistrate Judge Margolis on May 21, 1993. PMSNA contended that it had demonstrated that Viola's dismissal was part of a general reduction in the work force, conformed to its prescribed termination guidelines, and was not motivated by the plaintiff's age. In opposing defendant's motion, Viola relied almost exclusively on his own deposition, and argued that the circumstantial evidence summarized above was sufficiently "suspect" to defeat such a motion. Magistrate Judge Margolis recommended granting summary judgment in favor of PMSNA because Viola had failed to offer any evidence that age was a factor in his discharge and thus had failed to raise a genuine issue of material fact as to whether PMSNA's decision was discriminatory. The district court agreed and entered summary judgment in favor of defendants on January 5, 1994.

## II. Discussion

The analytical framework for considering claims alleging wrongful termination under the ADEA is well-established. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (stating that ADEA claims follow the same analytical framework as Title VII cases)). First, plaintiff must present a prima facie case of age discrimination. As first outlined in *McDon-*

nell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), plaintiff must show: " '(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.' " Woroski, 31 F.3d at 108 (quoting Spence v. Maryland Casualty Co., 995 F.2d 1147, 1155 (2d Cir.1993)). Once the plaintiff has established a prima facie case, the employer must proffer a legitimate, non-discriminatory business rationale for its actions. Id. If the employer articulates an age-neutral reason for the termination, plaintiff must bear the ultimate burden of proving that the employee's age was the real reason for the discharge. Id. (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1225 (2d Cir.1994)).

 Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment de novo, viewing the evidence "in a light most favorable to . . . the non-moving party, and draw[ing] all reasonable inferences in his favor." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993). This case follows in a long line of cases brought by individual employees caught up in a reduction-in-force. See, e.g., Woroski, 31 F.3d 105; Gallo, 22 F.3d 1219; Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100 (2d Cir.1989). Given the "minimal requirements" for establishing a prima facie case of employment discrimination, St. Mary's Honor Ctr. v. Hicks, — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993), and the ease with which employers can point to the down-sizing procedure to justify any single termination, these cases often turn on whether a plaintiff has established that the rationale offered was a mere pretext for age discrimination. To defeat the employer's motion for summary

judgment, "a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the employee's age was the real reason for the discharge." Woroski, 31 F.3d at 108–09 (citing Hicks, — U.S. at —, 113 S.Ct. at 2752). A grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor. Gallo, 22 F.3d at 1224.

The burden of establishing a prima facie case is a "modest one," Woroski, 31 F.3d at 109, but it has substance nevertheless. Viola easily established the first three elements of his prima facie case. Viola was dismissed at the age of 57, which places him within the group protected under the ADEA.[1] He adequately demonstrated his qualification for the position he held—Expeditor—as well as for the post-reorganization position of Coordinator–Expeditor which was filled eleven months after Viola was fired.

 As to the final element of his prima facie case (evidence which could lead to an inference of age discrimination), Viola offered his performance reports and his sworn deposition in which he described chronologically the events surrounding his dismissal. Viola argues that an inference of age discrimination may be drawn from the following facts: (1) Viola received his only poor performance review in twelve years of employment four months before his discharge; (2) at about the same time that PMSNA decided to implement a reduction in force, the company filled a recently vacant position with a younger employee (Pacowta) rather than leave it vacant; and (3) within a year following Viola's dismissal, PMSNA hired a new employee as a Coordinator Expeditor in a related department. The district court did not determine whether this showing was sufficient for a prima facie case, holding that, in any event, Viola failed to carry his burden of establishing that age was a factor in his discharge. We conclude that the circumstantial evi-

---

1. The ADEA prohibits the termination of an employee who is at least 40 years of age by reason of his age. See 29 U.S.C. §§ 623(a)(1), 631(a).

This prohibition does not bar any discharge based on factors other than age. See 29 U.S.C. § 623(f)(1).

dence, little as it is, is more than speculative. *See, e.g., Meiri v. Dacon,* 759 F.2d 989 (2d Cir.) (dismissing Title VII claim on grounds that plaintiff had offered only speculative evidence of intentional discrimination), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Viola's evidence therefore reaches the threshold of sufficiency, particularly in light of Viola's third allegation that his position was replaced by a new younger employee within one year of his termination.

■ The burden then passed to PMSNA to proffer a legitimate, non-discriminatory business rationale for dismissing Viola. PMSNA offered evidence that it implemented a business-justified, company-wide reduction in its work force in response to changes in business emphasis and economic necessities, and it relied upon non-discriminatory guidelines in selecting the employees to be fired. In fact, seniority (which has some rough correlation with age) was favored in the company's guidelines. The affidavits of the people who implemented the reduction in force support the conclusion that the decision to dismiss Viola was based on his unfavorable September 1990 performance review irrespective of his age. The employer's explanation and evidentiary support effectively rebutted Viola's prima facie showing.

■ Once an employer has produced evidence of a non-discriminatory rationale for its actions, " 'the factual inquiry proceeds to a new level of specificity.' " *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Plaintiff retains the "ultimate burden of persuasion" of proving that intentional discrimination, rather than the explanation offered by the employer, was the true reason for the termination. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749. To defeat a properly supported motion for summary judgment, plaintiff must "produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not the employee's age was the real reason for the discharge." *Woroski,* 31 F.3d at 110 (citing *Hicks,* ——

U.S. at ——, 113 S.Ct. at 2752) (emphasis added).

After reviewing all the evidence, the district court concluded that Viola had failed to demonstrate that his age was a factor in the decision to terminate his employment. We agree. The circumstances of Viola's termination are consistent with a broad-based program of downsizing, effected according to standards that are related to business needs and that do not discriminate against older employees. Castagna, who was Viola's supervisor, identified four positions in the Spare Parts Department to be eliminated including one of the three Expeditors. Viola's termination was mandated by the prescribed guidelines for non-union employees. Of the three Expeditors, Viola was the only employee to receive an overall evaluation of "needs improvement" and the identical poor grade on three of five subsidiary rating criteria: quality of work, quantity of work and job knowledge.

■ In the district court and on appeal, Viola has leveled three attacks on the apparently neutral mechanisms implemented by the company. First, Viola argues that the September 1990 adverse performance review was an unjustified criticism made to justify his firing in an anticipated wave of dismissals. Second, he argues that a much younger employee (Pacowta) was installed as an Expeditor while the reduction in force was already being planned so that the 57 year old Viola would become supernumerary. Third, Viola argues that another employee was hired eleven months after Viola's departure to do work that Viola had done either as Expeditor or in his brief time as Order Administrator at the company.

As to each of these three events, there is no factual dispute as to what happened. The only issue is whether they raise a jury issue as to pretext and discriminatory intent. They do not, because all of these events are fully consistent with the conduct of non-discriminatory business affairs, and there is no evidence that casts these events in any other light.

■ As to the performance review in September 1990, Viola alleges it is suspect

because it was the first adverse review he had received, it was given on the eve of the reduction in force and it was unjustified on the merits. Dismissals are often preceded by adverse performance reviews. Were we to view this pattern as suspect, without more, many employees would be able to appeal their personnel evaluations to a jury. If any set of circumstances could justify such an inference, they are not presented here. The September 1990 review was Viola's first negative evaluation; but it was only one step down from his prior performance level. Viola adduces many reasons why the evaluation was unjust, but he did not submit written objections to the performance evaluation, although he was privileged to do so and had frequently done so in the past. Most important, O'Connell states that, when he gave Viola the September 1990 evaluation, O'Connell was unaware that PMSNA was going to implement a work force reduction. That affidavit is uncontradicted.

■ As to the transfer of Pacowta, there is nothing suspect about filling a vacant position, or the assignment of another employee by transfer to a position she was willing to fill. There is evidence in the record that Castagna knew there would be a reduction in force as early as November 1990. But nothing in the record suggests that anyone knew which positions would be eliminated at the time Pacowta was transferred to her new position. Until those plans became firm, a transfer is essentially neutral in terms of job preservation. Under the company's reduction-in-force procedures, Viola was favored over Pacowta because she had the lowest seniority. Ultimately, she survived because she had a satisfactory performance rating and Viola did not. Viola's claim that Pacowta replaced him because he was older rests (precariously) on the claim that his performance review was rigged.

■ As to the job of Coordinator–Expeditor, Viola contends that he was qualified for the job, because he had held each position independently in the past, and that the job was filled by someone less qualified eleven months after Viola was fired. According to Viola, this demonstrates that his position was

not really eliminated and that his discharge was pretextual.

■ As part of its reorganization, PMSNA consolidated the positions of Coordinator and Expeditor, thereby eliminating the need for one of its three Expeditors in the Spare Parts Department. Eleven months after the reduction in force, PMSNA hired a new Coordinator–Expeditor in the Logistics and Repair Department, a related department within the same general "area of responsibility" as the Spare Parts Department. Viola argues that this hiring decision calls into question the economic necessity of his dismissal in the first place. The decision to hire replacement employees following a general reduction in the work force may, in conjunction with other evidence, establish an inference of an improper motive. *See, e.g., Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 49 (1st Cir.1990). Viola, however, has not adduced sufficient evidence to support such an inference. Based on the economic and organizational conditions present in December 1990, PMSNA legitimately identified redundancies in the Spare Parts Department and appropriately decided to eliminate four positions. Simply because a related department expanded sufficiently to require the services of a new employee nearly a year later does not in and of itself cast any doubt on the economic necessity of the original termination decision. Furthermore, PMSNA undertook no obligation to rehire Viola or offer the new position to him in December 1991. *Cf. Gallo*, 22 F.3d at 1227 (citing failure of employer to adhere to company policy giving preference for transfer and rehire to employee identified for termination as relevant to issue of pretext). Job qualification is a necessary predicate to establishing a prima facie case, but it is not sufficient to create an inference of discriminatory intent. Moreover, Viola's assertion that he was more qualified for the consolidated position is suspect given his unsatisfactory recent performance.

Viola asserts that the justifications offered by PMSNA are pretextual, but he has failed to adduce sufficient proof to raise that assertion to a jury issue. In any event, Viola has come forward with no evidence that PMSNA's motive in firing him was age dis-

crimination. Viewing all of the evidence in the light most favorable to Viola, we are convinced that no rational jury could find that PMSNA's decision to terminate him was motivated by age bias. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### Conclusion

For the foregoing reasons, we affirm the district court's judgment.