104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Walter L. PIDEK, Plaintiff-Appellant,
v.
XEROX CORPORATION, Defendant-Appellee.
 No. 95-9245.
 United States Court of Appeals, Second Circuit.
 Sept. 23, 1996.
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Western District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the District Court is hereby AFFIRMED.
 
 
 3
 W.D.N.Y.
 
 
 4
 AFFIRMED.
 
 
 5
 APPEARING FOR APPELLANT: Nira T. Kermisch, Rochester, N.Y.
 
 
 6
 APPEARING FOR APPELLEE: Margaret A. Clemens, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y.
 
 
 7
 Plaintiff Walter L. Pidek appeals from the District Court's November 6, 1995, order granting summary judgment to defendant-appellee Xerox Corp. in plaintiff's suit brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The Court found that Xerox had articulated legitimate, non-discriminatory reasons for terminating Pidek's employment and that he produced no evidence to demonstrate that these justifications were pretextual and that age discrimination had occurred.
 
 
 8
 Pidek was hired by Xerox in 1964. In 1974, he became an operations manager at the Business Systems Group ("BSG") of Xerox's Rochester Distribution Center. He was responsible for managing industrial engineering jobs and developing work standards for operations employees. He held this job until November 1981, when he was terminated by Xerox during the course of a company-wide downsizing. Pidek was forty-three years old at that time.
 
 
 9
 Pidek's legal claim against Xerox began in 1983, when he joined a class action filed in the District of New Jersey alleging that Xerox implemented a nationwide policy of using age as a determining factor in carrying out its reductions in force. See Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.1987). After the decertification of that class, Pidek commenced the instant case in the Western District of New York, alleging both a pattern and practice of age discrimination and individual age discrimination in his case. Twenty-two other former Xerox employees filed similar suits in the Western District.
 
 
 10
 Following extensive discovery, the District Court in April 1994 granted Xerox summary judgment in all twenty-three cases as to plaintiffs' pattern and practice claim, and Pidek has not sought review of that ruling. The Court initially reserved decision on the plaintiffs' claims of individual discrimination. In August 1994, the Court granted summary judgment for Xerox in ten of the cases, but denied without prejudice to renew Xerox's motion as to the remaining thirteen cases pending possible appeal to this Circuit. Plaintiff Pidek retained new counsel and was granted permission to submit additional evidence in opposition to Xerox's motion for summary judgment on his individual discrimination claim.
 
 
 11
 Meanwhile, most of the original plaintiffs settled with Xerox. Only one of the ten cases reached this Court, which affirmed the District Court's April 1994 decision in a summary order. Livecchi v. Xerox Corp., No. 94-7929 (2d Cir. June 21, 1995). When the District Court granted Xerox's renewed motion for summary judgment in November 1995, only two cases--including the instant one--were still pending.
 
 
 12
 This Court reviews the District Court's grant of summary judgment de novo, and will view the evidence in a light most favorable to Pidek and draw all reasonable inferences in his favor. However, "when there is nothing more than a metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and where "the evidence is merely colorable, or is not significantly probative, summary judgment" is proper. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). We affirm the District Court's order because we are "convinced that no rational jury could find that [Xerox's] decision[ ] to terminate [Pidek] was motivated by age bias." See Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994).
 
 
 13
 Suits under the ADEA are analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In view of the ease with which plaintiffs can "establish[ ] a prima facie case of employment discrimination and ... employers can point to the downsizing procedures to justify any single termination," ADEA suits alleging discriminatory discharge in the context of a company-wide reduction in force "often turn on whether a plaintiff has established that the rationale offered was a mere pretext for age discrimination." Viola v. Philips Medical Systems of North America, 42 F.3d 712, 716 (2d Cir.1994).
 
 
 14
 Xerox has proffered a legitimate non-discriminatory reason for discharging Pidek. Between 1980 and 1983, Xerox underwent a nationwide reduction in force to save costs in an increasingly competitive industry. By the end of 1983, it had reduced its workforce by approximately 18,000 people. Consonant with Xerox's generally decentralized scheme of operation, each local unit determined for itself the method to be used to effect the required downsizing.
 
 
 15
 The BSG unit employed a neutral "Performance-Service Matrix" to determine who would be selected for its November 1981 involuntary reduction in force, which resulted in a fifty percent downsizing. Pidek was placed in Cell 4 based solely on the combination of scores he received on recent performance appraisals, his skills, and his years of service. Other employees in Cell 4, including several under age forty, were terminated along with Pidek. A protected class analysis performed by Xerox indicated that a higher percentage of BSG employees were over the age of forty after the November 1981 reduction in force than before.
 
 
 16
 Pidek has failed to show that there exist any genuine issues of material fact about whether Xerox's proffered explanation was pretextual and whether age discrimination motivated his discharge. First, the Boston affidavit, which he cites, cannot support Pidek's claim for lack of a link between the events alleged in the affidavit and his 1981 discharge. Even if we assume the truth of the allegations by Boston--who neither knew Pidek nor had supervisory responsibilities within BSG--there is no evidence that Pidek himself was an employee who was singled-out because of his age. Second, Pidek's claim that a younger Xerox employee assumed some of the tasks formerly performed by him is of little help. There is no evidence that a younger employee was hired or reassigned to take over Pidek's position. Finally, Pidek's conclusory allegation that Xerox hired recent graduates during the year prior to the November 1981 reduction in force cannot help him defeat a summary judgment motion. Pidek submitted no evidence of the number of such graduates hired, their ages, their qualifications, or their positions in BSG. He has also offered no statistical evidence or anecdotal evidence showing age discrimination at Xerox or BSG.