Anthony SCELZA, Plaintiff,

v.

**NORTH FORK BANK, Defendant.**

No. 97 CV 30 (ADS).

United States District Court,
E.D. New York.

Jan. 23, 1999.

Winkler, Kurtz, Winkler & Dolewski, LLP, Port Jefferson Station, NY (Daniel A. Dolewski, of counsel), for plaintiff Anthony Scelza.

Wickham, Wickham & Bressler, P.C., Melville, NY (Eric J. Bressler, of counsel), for defendant North Fork Bank.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This matter arises from the claims of the plaintiff, Anthony Scelza ("Scelza" or the "plaintiff"), under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"). The plaintiff, who was 63 years of age at the time of his termination, was discharged from a high-level position with Extebank when it merged into the defendant, North Fork Bank ("North Fork"), and announced a reduction in work force. For the reasons that follow, the Court finds that there is no probative proof of age discrimination. In fact, the plaintiff has offered little by way of evidence, aside from the bare circumstance of his discharge at the age of 63. This is insufficient as a matter of law to support an ADEA claim; "a jury cannot infer discrimination from thin air." *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir.1998). Accordingly, the Court concludes that North Fork's motion for summary judgment dismissing the complaint must be granted.

## I. BACKGROUND

The following facts are derived from the parties' affidavits and deposition testimony. Except where otherwise indicated, such facts are not in dispute.

Extebank was a New York banking corporation wholly owned by Banco Exterior de Espana, S.A. ("Banco Exterior"). The plaintiff had been employed by Extebank since 1972 in various positions, ultimately culminating in his promotion to the senior management position he held at the time of his discharge: Senior Vice President. As a Senior Vice President, the plaintiff was responsible for Extebank's compliance with state and federal laws and regulations (Scelza Aff., ¶¶ 3–4; Scelza Dep., p. 6).

The defendant North Fork is a New York bank with executive offices in Melville, New York. Prior to March 15, 1996, North Fork employed two individuals who performed duties similar to those the plaintiff performed in his capacity as Senior Vice President at Extebank, namely, Anthony Abate, Senior Vice President of the Bank who had been employed there for 23 years, served as Corporate Secretary, and "was responsible for compliance with community reinvestment and other state and federal laws'; and Mary Hannabury, a Vice President of the Bank who had been employed there for 33 years, was a Compliance Officer, and 'was responsible for compliance with state and federal laws and regulations with respect to deposits, loans and other transactions with customers' " (Seelig Aff., ¶¶ 7–8).

On March 15, 1996, pursuant to an agreement between North Fork and Banco Exterior, Extebank was merged into North Fork (Scelza Aff., ¶ 5, 8; Seelig Aff., ¶¶ 5, 9). According to the affidavit of Karen Seelig, Senior Vice President of North Fork and head of the bank's Human Resources Department, the merger was expected to yield "economies of scale," or efficiencies, and greater profitability by eliminating duplicative job positions in all areas of the combined entity, except for the branch system, which was to remain largely intact due to the independent nature and function of each branch (Seelig Aff., ¶ 9). Seelig states that:

> As a part of the merger transaction, the heads of the various departments of [North Fork] were required to identify those employees of Extebank who were to be retained. This determination was made based upon whether or not the job function in issue could be absorbed by an existing employee of the Bank. In making this determination, the Bank considered the quantity and nature of the work to be performed. This process, however, did not apply to personnel in the branches (as opposed to the central office) since the branch system was to remain largely intact.

(Seelig Aff., ¶ 10).

Several months before the merger, on December 16, 1995, the plaintiff was notified

that his employment was to be terminated upon consummation of the merger (Seelig Aff., ¶ 11; Scelza Aff., ¶ 5; Scelza Dep., pp. 28–29, 36). The plaintiff attended a termination meeting with Seelig, at which, he testified at his deposition, "I just indicated to her that redundant with the compliance [sic], but I am certainly capable of other areas in the bank. [I said I could work in] [b]ranch administration." (Scelza Dep., p. 36). According to Scelza's affidavit in opposition to this motion, he "spoke with Ms. Seelig [at the termination meeting] regarding the possibility of my continued employment with North Fork Bank. Ms. Seelig's response was that [my position] was redundant and would not be needed any longer. I indicated to Ms. Seelig that I believed I could be productive in other areas of the bank where there may be openings, however, Ms. Seelig did not reply." (Scelza Aff., ¶ 8). The plaintiff also asserts in his affidavit that he "spoke with" Abate and Hannabury regarding his "need for employment" (Scelza Aff., ¶ 8). However, the plaintiff did not make any formal, written application to North Fork for employment in any particular position (Scelza Dep., p. 36). He also did not attend a May 18, 1996 North Fork job fair, which was advertised in Newsday (Seelig Aff., ¶ 12; Scelza Aff., ¶ 16).

Upon his March 15, 1996 termination, the plaintiff accepted a severance package consisting of approximately $ 253,000 in deferred compensation benefits and approximately $ 26,000 in severance benefits, although, apparently, he did not sign a waiver of the right to make a discrimination claim (Seelig Aff., ¶ 15). According to Seelig, "Effective upon the merger plaintiff's position was eliminated since it was redundant with those of Anthony Abate and Mary Hannabury and it was determined that the job functions previously performed by plaintiff could be absorbed by such employees...." (Seelig Aff., ¶ 11). The position previously held by the plaintiff was not recreated by the Bank (Seelig Aff., ¶ 14). Seelig avers that the positions of virtually all members of senior management of Extebank "were eliminated" (Seelig Aff., ¶ 14). Seelig states unequivocally that the plaintiff's age was not a factor in determining whether to retain him (Seelig Aff., ¶ 12).

Scelza acknowledged at his deposition that no one at Extebank or Banco Exterior ever made a disparaging remark to him regarding his age (Scelza Dep., p. 170). For that matter, no one at North Fork ever said anything to him about the termination decision being made based on age (Scelza Dep., p. 42).

## II. DISCUSSION

### A. Summary Judgment: The Standard

Summary judgment is appropriate only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. In Re: Blackwood Associates, L.P., 153 F.3d 61, 67 (2d Cir.1998) (citing Fed.R.Civ.P. 56[c]; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 137 (2d Cir.1998) (citing Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26 (2d Cir.1988)). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable. See Holt v. KMI–Continental, Inc., 95 F.3d 123, 128 (2d Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir.1991). The trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." B.F. Goodrich v. Betkoski, 99 F.3d 505, 522 (2d Cir.1996) (quoting Gallo v. Prudential Residential Servs., Ltd., Partnership, 22 F.3d 1219, 1224 [2d Cir.1994]), cert. denied sub nom., Zollo Drum Co., Inc. v. B.F. Goodrich Co., —— U.S. ——, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998).

"When deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations

should be taken into account." *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994). A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. *See Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984). Because "smoking gun" writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. *Gallo v. Prudential Residential Services,* 22 F.3d at 1225.

By the same token, "when there is nothing more than a metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and where the "evidence is merely colorable, or is not significantly probative, summary judgment" is proper. *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505. Thus, a District Court's grant of summary judgment will be upheld where "no rational jury could find that [the employer's] decision[ ] to terminate [the plaintiff] was motivated by age bias." *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994).

### B. The ADEA

The ADEA provides it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Act protects persons 40 years of age or older. *See id.* § 631(a). Under the ADEA, the ultimate question is whether an employer discriminated against an employee motivated by that person's age. *See* 29 U.S.C. § 623(a)(1).

■ "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason." *Stratton v. Department for the Aging for City of New York,* 132 F.3d 869, 878 (2d Cir.1997) (citing *Renz v. Grey Adver., Inc.,* 135 F.3d 217, 220–22 (2d Cir.1997); *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997); *Fields v. New York State Office of Mental Retardation & Dev. Disabilities,* 115 F.3d 116, 119 (2d Cir.1997)). The plaintiff has the ultimate burden of proof at trial to show discrimination in employment on account of age. *See Montana,* 869 F.2d at 103. Lawsuits under the ADEA are analyzed under the framework set out in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Montana,* 869 F.2d at 103; *Dister,* 859 F.2d at 1112.

■ In recent years, the three-step *McDonnell Douglas* formulation has been clarified. *St. Mary's Honor Center,* 509 U.S. at 510–11, 113 S.Ct. 2742; *Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). When an employer initiates a reduction-in-force, sometimes referred to as a "RIF," an employee has the initial burden of establishing a prima facie case of unlawful age discrimination by showing: (1) he is a member of a protected class; (2) who performed his job satisfactorily (or who was qualified for a new position); (3) who was discharged (or not offered the new position); and (4) under circumstances giving rise to an inference of age discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997); *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 110–11 (2d Cir.1992).

Second, if the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of

proving discriminatory intent." *Fisher,* 114 F.3d at 1335–36. In view of the ease with which plaintiffs can "establish[ ] a prima facie case of employment discrimination and ... employers can point to the downsizing procedures to justify any single termination," ADEA suits alleging discriminatory discharge in the context of a company-wide reduction in force "often turn on whether a plaintiff has established that the rationale offered was a mere pretext for age discrimination." *Viola v. Philips Medical Systems of North America,* 42 F.3d 712, 716 (2d Cir. 1994).

Third, if the defendant articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Center,* 509 U.S. at 510–11, 113 S.Ct. 2742. The plaintiff must then show, on the basis of all the evidence presented and without the benefit of any presumptions, that it is more likely than not that the employer's decision was motivated at least in part by age discrimination. Because the defendant has at this point offered a nondiscriminatory reason for its actions, the plaintiff must show that the proffered reason is in reality a pretext for unlawful discrimination, i.e., that it is "a mask for unlawful discrimination." *Fisher,* 114 F.3d at 1337. While a finding of pretext will not always lead to a conclusion of discrimination, it may, in some cases, constitute "powerful evidence of discrimination." *Id.* at 1338.

Here, the parties dispute whether Scelza has established a prima facie case. Some courts have held that there is no need to address the issue. "Since the Second Circuit's decision in *Fisher v. Vassar College,* 114 F.3d 1332 (2d Cir.1997), the only purpose served by the prima facie case is to force the defendant to articulate a non-discriminatory reason for the termination." *Lanahan v. Mutual Life Ins. Co. of New York,* 15 F.Supp.2d 381 (S.D.N.Y.1998) (discussing *Fisher* ). There has been a recent trend among district courts in this Circuit to conclude from the Second Circuit's decision in *Fisher* that "since it is the rare case in which a defendant will not have proffered such a reason, it is simpler and more straightfor-

ward to move directly to the ultimate question." *Lanahan v. Mutual Life Ins. Co. of New York,* 15 F.Supp.2d at 384 (citing *Lapsley v. Columbia University–College of Physicians & Surgeons,* 999 F.Supp. 506, 514–15 (S.D.N.Y.1997)). This is the sensible approach suggested in United States District Judge Denny Chin's recent, insightful article on this subject. *See* Chin & Golinsky, "Moving Beyond *McDonnell–Douglas:* A Simplified Method For Assessing Evidence In Discrimination Cases," 64 Brook.L.Rev. 659 (1998). If the Court were to forego this trend and undertake the traditional three-step analysis, it would conclude that the plaintiff had failed to make out a prima facie case of employment discrimination. To put it mildly, the plaintiff has little to offer aside from the bare fact that he was discharged at the age of 63. In the Court's view, even under the liberal standards, there is insufficient evidence to raise a triable issue that the discharge occurred in circumstances giving rise to an inference of discrimination. However, in view of the generous analysis which applies, this Court will assume—though it is a real stretch—that Scelza has established the prima facie case and move on to the ultimate question: has he produced any evidence from which a rational factfinder could determine that age was a motivating factor in his discharge?

The Supreme Court teaches that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 516, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2d Cir.1993). What this means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging him is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision. *See Taggart,* 924 F.2d at 46; *Saulpaugh,* 4 F.3d at 142. As clarified in *Fisher,* a plaintiff may not survive a motion for summary judgment simply by creating a fact issue as

to the pretextual nature of the defendant's proffered reasons for his discharge. Rather, even if North Fork's reasons were rejected completely, Scelza must nevertheless produce evidence from which a reasonable factfinder could infer that a discriminatory motive played a part in his discharge. *See Fisher*, 114 F.3d at 1346–47.

### C. North Fork's Non–Discriminatory Reasons for the Discharge

■ Having assumed that Scelza demonstrated a prima facie case of age discrimination, the defendant is obligated to produce evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, 509 U.S. at 508, 113 S.Ct. at 2748. North Fork presented affidavits of Karen Seelig, North Fork's Senior Vice President in charge of Human Resources, to show that the bank discharged Scelza pursuant to a reduction in work force occasioned by the merger of Scelza's prior employer, Extebank, into North Fork, the purpose of which was to "yield economies of scale ... by elimination of duplicative job positions in all areas of the combined entity," with certain exceptions (Seelig Aff., ¶¶ 5, 9–10). At the time of the merger, North Fork employed two individuals who performed the same work as the plaintiff, namely, Abate and Hannabury (Seelig Aff., ¶¶ 7–8). Such evidence, in and of itself, is adequate to meet the defendant's burden of rebutting the presumption of age discrimination. *See Gallo* 22 F.3d at 1226 (evidence that employer was in a business downturn and that a reduction-in-force was necessary to meet its budgetary goals sufficed to rebut the presumption of age discrimination that the plaintiff's prima facie case established).

The evidence here is even stronger than the facts in *Gallo*, because North Fork did not replace Scelza after the termination, thereby tending to show that the elimination of the third Senior Vice President position was motivated by a desire to achieve economies of scale. *See Woroski v. Nashua Corp.*, 31 F.3d 105 (selection of the plaintiffs' departments to suffer a dismissal was properly motivated by the assessment that those departments could function with fewer employees where the plaintiffs' positions were not refilled following termination); *compare Gallo*, 22 F.3d 1219 (reversing the district court's grant of summary judgment in favor of the employer where, within nine to ten months after an older employee's discharge, her duties which had been eliminated were resumed and assigned to younger employees); *Montana*, 869 F.2d 100 (reversing grant of summary judgment for an employer where, as a result of a internal reorganization, an older employee's position was ostensibly eliminated, but was, in fact, reassigned to younger employees). Significantly, "The [two] remaining [Senior Vice Presidents] were also 40 or older." *Woroski v. Nashua Corp.*, 31 F.3d at 109. In fact, Hannabury was 51 years old, and Abate was 54 years old. Further, the Court observes that Hannabury enjoyed greater seniority than Scelza, and Abate's 23 years with North Fork was just one year shy of the plaintiff's 24-year tenure with Extebank. *See Id.* Thus, this is not a case where a senior plaintiff was replaced by under-forty employees who had significantly less seniority and earned less money.

### D. Scelza's Effort to Raise Genuine Issues of Material, Triable Fact

■ Although an employer is certainly entitled to reduce its force and structurally reorganize its operations to maximize efficiencies, it may not discharge an employee "because" of his age. *See* 29 U.S.C. § 623(a)(1). Scelza, therefore, must demonstrate that the reduction-in-force at least in his individual case was a pretext for intentional age discrimination. "Although courts must be careful not to second-guess an employer's business judgment that it makes in good faith, plaintiff must be allowed to show that [his] employer's asserted reasons for discharging [him] were a pretext and that the real reason was [his] age." *Gallo*, 22 F.3d at 1227 (citing *Hicks*, 509 U.S. at 515, 113 S.Ct. at 2752).

The Court turns to the plaintiff's contentions regarding pretext that he asserts create a question of fact regarding North Fork's reasons for his discharge. Essentially, the

plaintiff proffers three categories of evidence that he claims demonstrate a practice of targeting older employees for termination by North Fork.

### i. *Retention of Younger Extebank Branch Personnel*

■ The plaintiff argues that North Fork discharged him "without ever attempting to place the plaintiff in other positions within the bank. The bank, however, did place younger employees in positions different than those which they occupied at Extebank." (Plaintiff's Mem., at 8–9). The plaintiff points to two such examples. The first is Philip Moliterno, who was 48 years old at the time of the merger, held the position of Marketing Officer at Extebank, and was placed in a branch administration position at North Fork after the merger. The second example is Walter Kopiske, a 34–year–old Assistant Manager at Extebank at the time of the merger. Following the merger, North Fork retained Kopiske as an Assistant Vice President and made him the Branch Manager at a particular location.

In the Court's view, even applying the generous standards required on a summary judgment motion in an employment discrimination case, such evidence does not create genuine issues of material, triable fact.

The fact that Kopiske was retained in the Assistant Vice President position over Scelza does not evidence a discriminatory motive, since, as the defendant aptly emphasizes, the plaintiff "was overqualified and over paid for such a position." (Defendant's Reply Mem., at 4). For example, "If a position's salary has been set at a level commensurate with certain job responsibilities and those responsibilities are subsequently diminished, an employer may make corresponding adjustments in positions and salaries regardless of the age of the employees involved." *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 33 (2d Cir.1993) (citation omitted); *see also Maresco*, 964 F.2d at 113 (stating that the decision to consolidate offices and terminate some workers may be based on "considerations of cost and administrative convenience," reasonable factors unrelated to age). "This is not a case in which an older person's salary exceeds that of a younger person with similar responsibilities solely because of longevity increases. [Scelza's] higher salary was based on the greater responsibilities of his position, and he was terminated because his position was eliminated." *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d at 33. The Second Circuit has "stated that 'nothing in the ADEA ... prohibits an employer from making employment decisions that relate an employee's salary to ... the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high' " to retain him in a lower position. *Id.* (quoting *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 117 (2d Cir.1991)).

This result is not altered by the fact that the 48–year–old Moliterno was placed in a branch administration position at North Fork. The plaintiff cites this as an example of the bank practice of "plac[ing] younger employees in positions different than those which they occupied at Extebank." (Plaintiff's Mem., p. 9). However, he offers nothing, by way of affidavit, deposition or other evidence, to indicate that Moliterno was retained in a "different" position following the merger. By way of contrast, according to Seelig's unrebutted affidavit, supported by an Organizational Chart, "Moliterno was, in fact, in charge of retail banking, business development, marketing, advertising and product development for the branch system. As such, he was retained in the position as a regional manager." (Seelig Aff., ¶ 9). In the Court's opinion, Scelza has failed to rebut the defendant's contention that "Moliterno was retained in a position he largely occupied prior to the merger." (Defendant's Reply Memo., p. 4). In fact, the plaintiff testified at his deposition that he did not even know what Moliterno's job at Extebank included, beyond that it involved "marketing." (Scelza Aff., pp. 51–52). Moreover, as Seelig avers, the "retention of Philip Moliterno in his position was consistent with the program of retention of bank personnel." (Seelig Reply Aff., ¶ 12).

■ The Court also deems significant the fact that the plaintiff apparently never formally asked to be considered for either of

these positions, or for that matter, for any other specify position following the merger. As noted above, the plaintiff testified at his deposition that he told Seelig during the termination meeting that, "I just indicated to her that redundant [*sic* ] with the compliance, but I am certainly capable of other areas in the bank. [I said I could work in] [b]ranch administration." (Scelza Dep., p. 36). He stated in his affidavit, somewhat differently, that he "indicated to Ms. Seelig that I believed I could be productive in other areas of the bank where there may be openings, however, Ms. Seelig did not reply." (Scelza Aff., ¶ 8). The plaintiff also asserts in his affidavit that he "spoke with" Abate and Hannabury regarding his "need for employment" (Scelza Aff., ¶ 8). The plaintiff, however, did not make any formal, written application to North Fork for employment in any particular position (Scelza Dep., p. 36). He also did not attend a job fair which North Fork held on May 18, 1996 and which it advertised in Newsday. Scelza states that he did not know about the job fair, and complains that no one told him about it (Seelig Aff., ¶ 12; Scelza Aff., ¶ 16). In a very recent decision regarding a failure to promote claim in the context of alleged race discrimination, the Second Circuit instructed:

> We read *McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion. This general mandate ensures that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer. Moreover, we believe if generally requesting a promotion in an annual review were sufficient to establish a prima facie case, employers would be unfairly burdened in their promotion efforts. Rather than simply considering individuals who have specifically applied for a promotion, an employer would additionally have to keep track of all employees who have generally expressed an interest in promotion and consider each of them for any opening for which they are qualified but did not specifically apply.

*Brown v. Coach Stores, Inc.*, 163 F.3d 706, 707 (2d Cir.1998). The Court perceives that a failure to promote claim is sufficiently analogous to a failure to rehire claim to require a plaintiff to provide proof, at the summary judgment phase, that he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions he generally requested that he be rehired. This is especially true where, as here, North Fork held a newspaper publicized job fair. In this regard, the Court rejects the plaintiff's insistence that he should have been personally told about the job fair, an unreasonable suggestion which is unsupported by either legal authority or common sense.

Accordingly, the evidence regarding North Fork's rehiring of Moliterno and Kopiske is insufficient to support an inference of discrimination.

### ii. *North Fork's Hiring of Three Senior Level Managers*

■ Next, the plaintiff asserts that between October 1, 1995 and August 31, 1996— prior to and after the March 15, 1996 merger—North Fork hired three senior level managers, all in their forties. The Court finds that this evidence is not probative of discriminatory motive.

Scelza asserts only that he was more qualified for one of the positions, that of Senior Vice President, Regional Manager, a position which was filled by Donna Williams. By inference, therefore, the Court can only assume that the plaintiff was not "more qualified" for the other two positions, thereby undermining the thrust of this argument. In any event, at the time of the pre-merger hiring of Williams, Extebank was "still a fully functioning entity with a need for a full staff, including the plaintiff." (Seelig Reply Aff., ¶ 8). According to Seelig's uncontradicted affidavit, "Other than normal attrition, no changes were made in Extebank management staffing, particularly at the senior level, by Extebank or at the request of [North Fork]." (Seelig Reply Aff., ¶ 8). "The positions of virtually all members of senior man-

agement of Extebank were eliminated" upon the merger (Seelig Aff., ¶ 14).

Accordingly, the evidence that North Fork hired three senior level managers is insufficient to support an inference of discrimination, and therefore raises no genuine issues of material fact sufficient to defeat the summary judgment motion.

### iii.   *Statistical Evidence*

Finally, the plaintiff contends that in connection with a merger, a disproportionate number of employees 60 years old and older were terminated. Although statistical evidence may give rise to an inference of discrimination, *see Stratton*, 132 F.3d at 877, the evidence provided by Scelza is insufficient as a matter of law.

The plaintiff puts forth three pieces of alleged statistical proof: (1) that North Fork terminated 15 (including Scelza) of 17 employees of Extebank who were sixty years old or older; (2) that the average age of the Extebank employees at the time of the defendant's acquisition of Extebank was 42 years old, which decreased to 39 years old following the merger; and (3) the average age of the Extebank employees terminated by North Fork was 46 years old (Plaintiff's Mem., at 10).

■ This statistical evidence is not probative of age discrimination for several reasons. First, a distinction must be made between full-time and part-time employees. Out of the 15, 60–year–old or older employees who were terminated, seven were part time employees. However, "All of the Extebank part-time employees ... were terminated, regardless of age, since their job functions could be filled by [North Fork] Bank employees." (Seelig Reply Aff., ¶ 5). Moreover, "part-time positions which were eliminated were already filled at the Bank largely by employees of comparable age. In fact, out of eight similar part-time positions at the Bank, six were filled by employees 60 years old or older." (Seelig Reply Aff., ¶ 5).

■ The termination of 8, full-time, older employees also does not further the plaintiff's case. There were seven older employees, in addition to the plaintiff, who were terminated. However, of these seven, five occupied positions which were not retained across the board. (Seelig Reply Aff., ¶ 6). For example, no paying and receiving clerks were retained, regardless of age (Seelig Reply Aff., ¶ 6). Of the other two positions, in each case North Fork decided to choose one of two employees, and in both cases selected the more experienced employee (Seelig Reply Aff., ¶ 6).

■ Finally, the Court finds no probative value may be derived from the fact that the average age of the Extebank employees at the time of the defendant's acquisition of Extebank was 42–years–old, which decreased to 39–years–old following the merger. Such an negligible drop in the average age is statistically insignificant, as is the fact that the average age of the Extebank employees terminated by North Fork was 46 years old.

In so finding, "the Court is mindful that the evidence must be looked at in its entirety, rather than piecemeal, in deciding a motion for summary judgment.... However, in this case none of [Scelza's] evidence has probative value, and the evidence does not gain in inferential power by being lumped together. [Scelza] has failed to meet his burden of producing evidence which supports a finding that age played a motivating part in his discharge...." *Lanahan v. Mutual Life Ins. Co. of New York*, 15 F.Supp.2d 381 (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997)). Even if the statistical and circumstantial proof offered by the plaintiff was probative and constituted "some evidence of discrimination," it is not adequate to survive a summary judgment motion. As the Second Circuit has explained, "some evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason for the discharge." *Woroski*, 31 F.3d at 105 (citations omitted). Moreover, there is no evidence that anyone made invidious comments about Scelza's or anyone else's age, or that North Fork held discriminatory

attitudes towards older workers. *See Pearlstein v. Staten Island University Hosp.*, 886 F.Supp. 260 (E.D.N.Y.1995) (taking into account lack of invidious remarks evidencing age discrimination). For these reasons, summary judgment dismissing the complaint is mandated.

### III. CONCLUSION

Having reviewed the parties' submissions, heard oral argument and for the reasons set forth above, it is hereby

**ORDERED,** that North Fork's Motion for summary judgment dismissing the complaint is granted in its entirety; and it is further

**ORDERED,** that the Complaint is dismissed in its entirety and the Clerk of the Court is directed to close this case.

**SO ORDERED.**